**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| ELIZABETH BROOKBANK. | ) ) ) | |
| Plaintiff, | ) ) | Case No. 01:15-cv-00165 |
| v. | ) ) | Judge Susan J. Dlott |
|  | ) | Magistrate Judge Karen Litkovitz |
| ANTHEM LIFE INSURANCE COMPANY | ) ) ) | |
| Defendant. | ) ) ) | |

## MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Defendant, Anthem Life Insurance Company ("Anthem Life"), hereby moves for judgment on the administrative record on all claims asserted against it by plaintiff, Elizabeth Brookbank ("Ms. Brookbank"). Anthem Life is entitled to judgment in its favor because the decision to deny benefits to Ms. Brookbank under her employer's long-term disability plan was not arbitrary and capricious. A memorandum in support is attached.

Dated: January 15, 2016

Respectfully submitted,

/s/ Kent A. Britt
Kent A. Britt (0068182)
Daniel C. Morgenstern (0088289)
VORYS, SATER, SEYMOUR and PEASE LLP
301 East Fourth Street, Suite 3500
Great American Tower
Cincinnati, Ohio 45202
Telephone: 513.723.4488
Facsimile: 513.852.7830
Email: kabritt@vorys.com
       dcmorgenstern@vorys.com

*Counsel for Anthem Life Insurance Company*

1

**MEMORANDUM IN SUPPORT**

I.   **PRELIMINARY STATEMENT**

Anthem Life's decision to deny long-term disability ("LTD") benefits to Ms. Brookbank was precisely the sort of "deliberate, principled reasoning process" that ERISA requires from a claims administrator. The decision was based on a functional capacity evaluation ("FCE") that found Ms. Brookbank to be capable of performing light physical work—exactly the sort of work required by her occupation. The decision was also premised on complete reviews of Ms. Brookbank's medical files by two independent rheumatology physicians, both of whom concluded that there was no objective medical evidence to support a finding that Ms. Brookbank could not perform the duties of her occupation.

Moreover, Ms. Brookbank failed to provide proof of her continued disability, as required by the express terms of her long-term disability plan. Indeed, she simply stopped going to appointments with her treating physician. With the support of an FCE and two independent physicians—and without any contradictory evidence from Ms. Brookbank—Anthem Life's denial of benefits was anything but arbitrary and capricious. Accordingly, Anthem Life is entitled to judgment on the administrative record. Finally, because ERISA preempts Ms. Brookbank's state law claims for breach of contract and bad faith, those claims must also be dismissed.

II.  **FACTS**

Knovation, Inc. ("Knovation") provides a long-term disability plan to its employees funded by a policy of group insurance it purchased from Anthem Life (the "Plan"). The Plan is governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C.

Section 1102(1) ("ERISA").[1]  (*See* Administrative Record ("A.R."), at Anthem-Brookbank000106.)  As an employee of Knovation, Ms. Brookbank was a participant in the Plan.

The Plan provides that LTD benefits are payable if Anthem Life "receive[s] Proof of Your Disability."  (*Id*. at Anthem-Brookbank000129).  Under the Plan, "Disabled" or "Disability" is defined to mean "***unable to do the Material and Substantial Duties of Your Own Occupation***; and ... receiving Regular Care from a Physician for that Injury or Illness; and... Your Disability Work Earnings, if any, are less than or equal to 80% of Your Indexed Monthly Earnings."  (*Id*. at Anthem-Brookbank000127 (emphasis added).)[2]  "Material and Substantial Duties" are defined as duties that "are normally required for the performance of your occupation or any occupation; and cannot be reasonably omitted or modified[.]"  (*Id*. at Anthem-Brookbank000117.)  And, "Proof" is defined as "evidence satisfactory to [Anthem Life] that the terms and provisions of the Policy have been met" and may include "questionnaires, physical exams, or written documentation and records[.]"  (*Id*. at Anthem-Brookbank000118.)  If a claimant is found to be disabled, the Plan requires that "from time to time [the claimant] must give Proof satisfactory to [Anthem Life] at [the claimant's] expense that [the claimant is] still Disabled." (*Id.* at Anthem-Brookbank000152.)

The Plan provides that LTD benefits end when the claimant is "no longer Disabled under the terms of the Policy," is "no longer receiving accepting or following Regular Care from a Physician," or if "We ask You for Proof that You are still Disabled" and Anthem Life does not

---

[1] Knovation also provides its employees with a short-term disability plan funded by a policy of group insurance it purchased from Anthem Life..
[2] After 24 months, a claimant must demonstrate, among other criteria, that she is unable to perform the duties of any occupation for which she may become reasonably qualified by education, training, or experience. (*Id.* at Anthem-Brookbank000127.)

3

receive such proof within 31 days of the request. (*Id.* at Anthem-Brookbank000132.)[3] The Plan provides that Anthem Life has "discretionary authority to interpret the terms and provisions" of the Plan. (*Id.* at Anthem-Brookbank000155.)

Ms. Brookbank was a Customer Support Specialist at Knovation, a position considered "light duty" based upon the U.S. Department of Labor's definition of "Light Work."[4] (*Id.* at Anthem-Brookbank000166.) Based on a diagnosis from her treating rheumatologist that she suffered from systemic lupus erythematosus and fibromyalgia, Ms. Brookbank left her position in July 2012 and filed a claim for short-terms disability ("STD") benefits with Anthem Life. (*Id.* at Anthem-Brookbank000400.) Anthem Life granted Ms. Brookbank STD benefits retroactive to July 2, 2012. (*Id.* at Anthem-Brookbank000250.)

With her STD benefits due to expire in October 2012, Ms. Brookbank applied for long-term disability ("LTD") benefits on October 2, 2012. To determine Ms. Brookbank's eligibility for LTD benefits under the Plan, Anthem Life, among other things, obtained an independent rheumatology review from Dr. Joel Kovarsky, M.D., a Board Certified Internal Medicine and Rheumatology physician. Dr. Kovarsky reviewed Ms. Brookbank's medical records and provided a report to Anthem Life on November 8, 2012. (*Id.* at Anthem-Brookbank000257.) As reflected in his report, Dr. Kovarsky concluded that "there is no documentation to support a total inability to work." (*Id.* at Anthem-Brookbank000258.) He also concluded that Ms. Brookbank's "self-reported inability to perform work on a cognitive basis is not supported by any of the

---

[3] Also, under the Plan, benefits for disabilities based on subjective reports are limited to 24 months (*Id.* at Anthem-Brookbank000146.)
[4] The U.S. Department of Labor defines "Light Work" as "exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." A.R. at Anthem-Brookbank000166.

medical findings in the medical records that were provided." (*Id.*) Dr. Kovarsky recommended a limited work schedule of 20 hours per week (4 hours a day, 5 days a week) and further recommended, in accordance with the terms of the Plan, that Ms. Brookbank undergo a reevaluation in six months "to allow time to see how the disease course developed and how she responded to treatment." (*Id.* at Anthem-Brookbank000259.)

On November 29, 2012, Anthem Life approved Ms. Brookbank's claim for LTD benefits retroactive to October 8, 2012, the date upon which her STD benefits expired, and informed her that Anthem Life "will continue to request periodic medical updates as needed, which will include medical documentation and other information to ensure our continued accurate assessment of your condition and the impact to your functional ability."[5] (*Id.* at Anthem-Brookbank000250.)

In June 2013, Anthem Life contacted Ms. Brookbank to request proof of her continued disability consistent with Dr. Kovarsky's opinion. (*Id.* at Anthem-Brookbank000231.) Dr. Ware submitted a May 7, 2013 Attending Physician's Statement indicating that Ms. Brookbank had no limitations (activities that she could not perform). (*Id.* at Anthem-Brookbank000615.) He noted that Ms. Brookbank's restrictions (activities she should not perform) included "prolonged walking, sitting . . . pulling, lifting." (*Id.*) Dr. Ware indicated that, notwithstanding her reported joint pain, she was "capable of clerical/administrative" activity. (*Id.* at Anthem-Brookbank000616.)

Shortly thereafter, Anthem Life scheduled a functional capacity evaluation ("FCE") for Ms. Brookbank, which she completed on July 8, 2013. (*Id.* at Anthem-Brookbank000183, Anthem-Brookbank000617.) The results of the FCE reflect that Ms. Brookbank "demonstrated

---

[5] Indeed, the Plan required Ms. Brookbank to provide proof of continued disability. *Id.* at Anthem-Brookbank000152 ("From time to time You must give Proof satisfactory to Us at Your expense that You are still Disabled."); *see also* June 12, 2013 Letter from Anthem Life to Ms. Brookbank, at Anthem-Brookbank000231.

the ability to occasionally lift up to 30 lbs... [and] 10 lbs of lifting frequently.... Ms. Brookbank demonstrated frequent sitting, standing, and walking with positional changes as needed." (*Id*. at Anthem-Brookbank000169, Anthem-Brookbank000616.) Accordingly, the FCE demonstrated that Ms. Brookbank had the ability to perform work at a "light" physical demand level and, thus, the ability to perform the functions of her light duty occupation. (*Id.* at Anthem-Brookbank000183, Anthem-Brookbank000617.)

On August 29, 2013, based, in part, on the results of the FCE, Anthem Life determined that Ms. Brookbank no longer met the definition of disability under the Plan and, therefore, denied continued LTD benefits beyond August 29, 2013. (*Id*. at Anthem-Brookbank000165.) Anthem Life's letter communicating its decision explained that Ms. Brookbank could request a review of the decision and include any other documents, records or information that would support her appeal. (*Id*. at Anthem-Brookbank000167.).

By letter dated September 6, 2013, Ms. Brookbank requested a review of Anthem Life's decision. (*Id*. at Anthem-Brookbank000470.) In a separate letter dated September 6, 2013, Ms. Brookbank stated that she "attached recent medical notes and records from Dr. Mina Lutts and Dr. Avis Ware." (*Id*. at Anthem-Brookbank000456.) The "recent medical notes and records" that Ms. Brookbank provided from her attending rheumatologist, Dr. Ware, were from May 2013, two months before the FCE was conducted. (*Id*. at Anthem-Brookbank000467.) Further, Dr. Ware's notes from May 2013 equivocate regarding Ms. Brookbank's condition, describing the reason for Ms. Brookbank's visit as "a follow up evaluation of *possible* systemic lupus and fibromyalgia." (*Id*.) (emphasis added) In another letter to Anthem Life, dated October 4, 2013, Ms. Brookbank claimed that she had an appointment with Dr. Ware "shortly," and also attached lab test results from September 2013 that were apparently ordered by Dr. Lutts, Ms. Brookbank's

6

family practitioner. (*Id*. at Anthem-Brookbank000473.) Ms. Brookbank never provided Anthem Life with any notes, records or other documentation from an appointment with Dr. Ware after May 2013. Likewise, she never produced an analysis by Dr. Ware or any other rheumatology expert regarding the lab test results that she attached to her October 4, 2013 letter.

Anthem Life performed an appeal review conducted by an employee who had no role in the prior determination. Recognizing that Ms. Brookbank submitted no records from Dr. Ware beyond May 2013, Anthem Life requested such records from Dr. Ware on November 4, 2013 and again on November 11, 2013. (*Id*. at Anthem-Brookbank000455, Anthem-Brookbank000450.)

Anthem Life referred all the medical information to independent vendor, Reliable Review Services, asking that a rheumatologist review the information, speak with Ms. Brookbank's treating rheumatologist, and comment on Ms. Brookbank's functional impairment, if any. (*Id.* at Anthem-Brookbank000401, Anthem-Brookbank000414-Anthem-Brookbank000419, Anthem-Brookbank000524.) Reliable Review Services facilitated a review by Dr. Dayton Dennis Payne, a Board Certified Internal Medicine and Rheumatology physician. *Id.* As he reported to Anthem on December 2, 2013, Dr. Payne reviewed the records from Ms. Brookbank's visits to Dr. Ware and noted that:

- A March 13, 2012 joint exam was normal, and returned negative sub-serology except for a DSDNA test that was "slightly elevated."

- "An entire physical exam" on May 28, 2012 was normal.

- Ms. Brookbank had two more normal physical exams on March 21, 2013 and May 14, 2013, except for Ms. Brookbank's own reports of "tender points."

(*Id*. at Anthem-Brookbank000484.) Dr. Payne noted that he consulted with Dr. Ware, who stated that she had not seen Ms. Brookbank since May 2013 and that Ms. Brookbank did not

7

show up for her August 2013 appointment.[6] (*Id.* at Anthem-Brookbank000486.) Dr. Ware "was not able to provide any follow-up information in regards to functionality." (*Id.*)

Based on his review of all the medical evidence and his conversation with Dr. Ware, Dr. Payne concluded that "it is clearly supported that [Ms. Brookbank] would have the abilities to perform her occupation, beyond August 29, 2013, from a rheumatology perspective". (*Id.* at Anthem-Brookbank000485.) He stated that despite Ms. Brookbank's complaints of "diffuse pain, stiffness, and fatigue," her physical exams by Dr. Ware and the "work-up data" reveal "no clinical features to support any objective disease other than fibromyalgia." (*Id.*) He also concluded that "the data in the file in the historical record and exams do not support active systemic lupus." (*Id.*) Notwithstanding Ms. Brookbank's fibromyalgia, Dr. Payne found the FCE "supports a retained ability to perform her regular unrestricted job . . . ." (*Id.* at Anthem-Brookbank000487.)

On December 6, 2013, having completed the review requested by Ms. Brookbank, Anthem Life upheld its previous decision that Ms. Brookbank failed to meet the definition of disability under the terms of the Plan beyond August 29, 2013. (*Id.* at Anthem-Brookbank000399.)

### III. LAW AND ARGUMENT

#### A. Standard

ERISA governs "any employee benefit plan" established or maintained by an employer "engaged in commerce[.]" 29 U.S.C. § 1003(a)(1). Further, ERISA defines an "employee benefit plan" or "employee welfare benefit plan" to include disability insurance plans provided

---

[6] Dr. Payne was also consulted in May 2013 in connection with Ms. Brookbank's appeal of Anthem Life's decision not to waive her life insurance premiums. *Id.* at Anthem-Brookbank000023. That review related to a separate issue on a separate policy and, thus, has no impact on the standard to be applied by this Court in its review of Anthem Life's decision as to LTD benefits.

by employers to their employees. *See* 29 U.S.C. § 1002(1). As such, the Plan is governed by ERISA.

Because the Plan grants Anthem Life discretionary authority, a decision to deny benefits must be analyzed under an arbitrary and capricious standard. *See Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 704 (6th Cir. 2014). An arbitrary and capricious standard "means that the decision denying benefits must be upheld so long as it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Id*. This standard is the "least demanding form of judicial review." *Eastin v. Reliance Std. Life Ins. Co.*, No. 13-6247, 2014 U.S. App. LEXIS 13376, at * 4 (6th Cir. Jul. 10, 2014). Also, the only evidence that can be considered in making this determination is the administrative record.[7] *See Niswonger v. Liberty Life Assur. Co.*, No. 3:12-cv-374, 2013 U.S. Dist. LEXIS 146113, at *2 (S.D. Ohio, Oct. 9, 2013) (citing *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998)) ("The Sixth Circuit has directed that claims regarding the denial of ERISA benefits are to be resolved using motions for judgment on the administrative record," and "the court is to conduct its review based solely on the administrative record.")

Additionally, where an insured is initially granted coverage under a plan governed by ERISA, "[t]he insured employee bears the burden of proving his or her continuing disability." *Kiel v. Life Ins. Co. of N. Am.*, 345 F. App'x 52, 58 (6th Cir. 2009); *see also Morgan v. Sun Life of Can.*, No. 98-6772, 2000 U.S. App. LEXIS 21243, at *6 (6th Cir. Aug. 16, 2000) (holding that a denial of benefits was not arbitrary and capricious where the claimant failed to provide evidence of her continuing disability); *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 661 (6th Cir.

---

[7] The standard of review is not altered by a so-called structural conflict of interest. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). The Court should consider conflict as it would any other factor. *DeLisle v. Sun Life Assur. Co. of Can.*, 558 F.3d 440, 444 (6th Cir. 2009). Here, there is not a shred of evidence that Anthem Life's motivation was anything other than applying the clear terms of the Policy.

2013) (noting that the plan placed "the burden on [plaintiff] to establish his disability rather than on MetLife to show to the contrary.").

**B. Anthem Life's Denial of Benefits Was Not Arbitrary and Capricious.**

As reflected by the administrative record, Anthem Life's decision that Ms. Brookbank failed to meet the definition of disability beyond August 29, 2013 was the product of a deliberate and principled procedure and is supported by substantial evidence. First, Anthem Life's decision that Ms. Brookbank failed to meet the definition of disability as of August 29, 2013 is supported by the results of the July 8, 2013 FCE. The FCE, an objective measure of physical capacity, revealed that Ms. Brookbank has the ability to perform work at a light physical demand level. (*See* A.R., Anthem-Brookbank000617.) Ms. Brookbank offered no evidence to rebut the FCE findings. The Sixth Circuit has recognized the efficacy of an FCE in evaluating the physical manifestations of fibromyalgia and related conditions. *See Eastin*, 2014 U.S. App. LEXIS 13376, at * 6 ("[A]n FCE is one method by which a claimant can demonstrate the physical limitations caused by fibromyalgia."); *Huffaker v. Metro Life Ins. Co.*, 271 F. App'x. 493, 500 (6th Cir. 2008) (noting that an FCE is "a reliable and objective method of gauging the extent one can complete work-related tasks.")

Anthem Life's decision that Ms. Brookbank failed to meet the definition of disability beyond August 29, 2013 was further supported by two independent reviews conducted by Board Certified rheumatology physicians. As explained by the Sixth Circuit, "Under ERISA, plan administrators are not required to accord special deference to the opinions of treating physicians. Moreover, ERISA does not impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d

497, 504 (6th Cir. 2010) citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003)..

Here, Anthem Life obtained a review by Dr. Joel Kovarsky in making its initial determination to award LTD benefits under the Plan. Dr. Kovarsky concluded that "there is no documentation to support a total inability to work." (*Id*. at Anthem-Brookbank000258.) Later, as part of Ms. Brookbank's appeal of Anthem Life's denial of benefits beyond August 29, 2013, Anthem Life obtained a second independent rheumatology review by Dr. Payne. He confirmed there were no objective medical findings to contradict the results of the FCE or to otherwise indicate that Ms. Brookbank was incapable of performing her occupation. (*Id*. at Anthem-Brookbank000485.) To the extent Dr. Payne disagreed with Dr. Ware,[8] he did so based upon the objective findings of the FCE and Dr. Ware's own exam results, which were consistently normal. (*Id*. at Anthem-Brookbank000484.) And Sixth Circuit law is exceedingly clear that "it is entirely reasonable for an insurer to request objective evidence of a claimant's functional capacity." *Rose v. Hartford Fin. Servs. Grp., Inc.*, 268 F. App'x 444, 453 (6th Cir. 2008). *See also Cooper v. Life Ins. Co. of Am.*, 486 F.3d 157, 166 (6th Cir. 2007) ("[r]equiring a claimant to provide objective medical evidence of disability is not irrational or unreasonable."); *Huffaker v. Metro. Life Ins. Co.*, 271 F. App'x 493, 499 (6th Cir. 2008).

Moreover, Ms. Brookbank utterly fails to meet her burden to prove her continued disability beyond August 29, 2013. In completing his review in November 2013, Dr. Payne contacted Ms. Brookbank's treating physician, Dr. Avis Ware, only to find out that Ms. Brookbank did not show up for her August 2013 appointment and that Dr. Ware had not seen

---

[8] It is unclear whether Dr. Ware even opines that Ms. Brookbank is disabled from her own occupation as of August 2013. Dr. Ware's May 2013 Attending Physician's Statement is vague, simply indicating that Ms. Brookbank should not engaged in prolonged walking or sitting but is capable of clerical work. (*Id.* at Anthem-Brookbank000615.) Moreover, Brookbank supplied no records from Dr. Ware beyond May 2013. (Id. at Anthem-Brookbank000401.)

Ms. Brookbank since May 2013. (*Id*. at Anthem-Brookbank000486.) Ms. Brookbank's failure to attend an appointment with Dr. Ware left her treating physician without any information regarding Ms. Brookbank's current condition. This failure by Ms. Brookbank to provide proof of her continued disability is fatal to her claim, even if she could take issue with the findings of the FCE and the independent rheumatology physicians—which she cannot.[9] *See Kiel*, 345 F. App'x at 58; *Morgan*, 2000 U.S. App. LEXIS 21243, at *6.

In sum, Anthem Life's determination that Ms. Brookbank failed to meet her burden of providing proof of disability beyond August 29, 2013 was correct, let alone reasonable. In an effort to reach the correct conclusion, Anthem Life facilitated reviews of her medical records by two independent Board Certified rheumatologists and an FCE. Ms. Brookbank had the opportunity—and the obligation—to provide evidence of continued disability, but she stopped attending appointments with her treating physician. Put simply, there is nothing in the administrative record to suggest that either Anthem Life's process or the evidence supporting its decision were in any way insufficient, arbitrary or capricious.

### C. Ms. Brookbank's Non-ERISA Claims Are Preempted by ERISA.

Ms. Brookbank's complaint asserts claims for breach of contract and bad faith. State law breach of contract and bad faith claims are, however, preempted by ERISA. *See Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*, 689 F.3d 793, 801-802 (6th Cir. 2012) (holding that a state law breach of contract claim is preempted by ERISA); *Lee v. MBNA Long Term Disability & Benefit Plan*, 136 F. App'x. 734, 746 (6th Cir. 2005) ("The Supreme Court and this Circuit have clearly held that a state-law claim for breach of fiduciary duty and/or bad faith are preempted."); *Massachusetts Cas. Ins. Co. v. Reynolds*, 113 F.3d 1450, 1454 (6th Cir. 1997) ("The Supreme

---

[9] Indeed, Ms. Brookbank's failure to attend appointments with her treating rheumatologist is further grounds for denial of LTD benefits under the Plan. (*Id*. at Anthem-Brookbank000132.) (providing that LTD benefits end when the claimant is "no longer receiving accepting or following Regular Care from a Physician.")

12

Court has expressly held that bad faith claims for improper processing of claims undoubtedly meet the criteria for pre-emption under ERISA.") Thus, any non-ERISA claims asserted by Ms. Brookbank are preempted and must be dismissed.

## IV. CONCLUSION

For all of the foregoing reasons, Anthem Life is entitled to judgment in its favor and against Plaintiff on the administrative record and all claims asserted by Plaintiff.

Dated: January 15, 2016

Respectfully submitted,

/s/ Kent A. Britt
Kent A. Britt (0068182)
Daniel C. Morgenstern (0088289)
VORYS, SATER, SEYMOUR and PEASE LLP
301 East Fourth Street, Suite 3500
Great American Tower
Cincinnati, Ohio 45202
Telephone: 513.723.4488
Facsimile: 513.852.7830
Email: kabritt@vorys.com
　　　　dcmorgenstern@vorys.com

*Counsel for Anthem Life Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing Answer of Defendant, Anthem Life Insurance Company was served upon all counsel via the Court's ECF system on this 15th day of January, 2016:

/s/ Kent A. Britt
Kent A. Britt