UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ELIZABETH BROOKBANK,
    Plaintiff,

vs.

ANTHEM LIFE INSURANCE
COMPANY,
    Defendant.

Civil Action No. 1:15-cv-165
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

    This case arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C.

§ 1001, *et seq*. (ERISA). Plaintiff Elizabeth Brookbank asserts an ERISA claim for benefits

under 29 U.S.C. § 1132(a)(1)(B) against Anthem Life Insurance Company (Anthem). Plaintiff

contends that Anthem's termination of her long-term disability (LTD) benefits under the terms of

her employer-sponsored group benefits plan violates ERISA. Plaintiff also brings state law

claims for breach of contract and bad faith.[1] This matter is before the Court on the parties' cross-

motions for judgment on the administrative record (Docs. 22, 23), their respective opposing and

supporting memoranda (Docs. 24, 25), and their reply memoranda (Docs. 26-1, 27).

## I. FACTUAL BACKGROUND

### A. The LTD Plan

    Plaintiff was formerly employed by Knovation, Inc. (Knovation) as an Inside Sales

Representative and/or Account Manager. (AR 166).[2] Plaintiff's job was considered to be "light

work," which the United States Department of Labor defines as work that entails:

---

[1] Plaintiff originally filed the complaint in this action in the Butler County, Ohio, Court of Common Pleas. (Doc.
2). Defendant removed the action to this Court under the Court's federal question and diversity jurisdiction, 28
U.S.C. §§ 1331, 1332(a). (Doc. 1).
[2] "AR" refers to the Administrative Record filed in this case (Doc. 16), and the numbers following the "AR"
designation are the last three digits of the cited page number.

> [e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.[3]

(AR 166).

By virtue of her employment with Knovation, plaintiff participated in an LTD insurance plan Knovation provides to its employees which is funded by a policy of group insurance Knovation purchased from Anthem, Policy No. 00170576 (the Plan). (AR 106-64). The Plan is governed by ERISA, 29 U.S.C. § 1002(1). Plaintiff also participated in a short-term disability (STD) plan funded by a policy of group insurance Knovation purchased from Anthem. (Doc. 22 at 3, n. 1).

The Plan provides for the payment of a monthly benefit if an employee becomes disabled while insured under the Plan, the disability continues past the "Elimination Period,"[4] and Anthem receives proof of the claimant's disability. (AR 127, 129). To satisfy the definition of "Disabled" and "Disability" under the terms of the Plan, (1) the employee must be unable to perform the "Material and Substantial Duties" of her own occupation; (2) the employee must be receiving regular care from a physician for that injury or illness; and (3) the employee's "Disability Work Earnings, if any, [must be] less than or equal to 80% of [the employee's] Indexed Monthly Earnings." (AR 127). Following the Elimination Period and the next 24

---

[3] *See* http://www.occupationalinfo.org/appendxc_1.html#STRENGTH.
[4] The "Elimination Period" is a "period of continuous disability which must be satisfied before [the claimant] is eligible to receive benefits under the Policy." (AR 115).

months, the definition of "disability" changes in that the employee must demonstrate she is unable to perform the duties of "any Gainful Occupation for which [the employee is] or may become reasonably qualified by education, training, or experience. . . ." (AR 127).

"Material and Substantial Duties" are defined as duties that are "normally required for the performance" of the employee's own occupation or any occupation and "[c]annot be reasonably omitted or modified" except that the claimant will be considered able to perform all "Material and Substantial Duties" if she is working or has the capability to work her normal scheduled hours. (AR 117). "Proof" under the Plan means "evidence satisfactory to [Anthem] that the terms and provisions of the Policy have been met. Proof may include but is not limited to: questionnaires, physical exams, or Written documentation and records as required by [Anthem]." (AR 118). The proof must be received by Anthem at its administrative office and must be provided at the claimant's expense. (*Id.*).

The Plan provides that the claimant must from "time to time" give "Proof satisfactory" to Anthem that she is still disabled and that Anthem will request this proof "at reasonable intervals." (AR 152). The claimant is required to provide such proof to Anthem "within 30 days, or as soon as reasonably possible thereafter." (*Id.*). The Plan states that Anthem "will stop benefit payments if [the claimant does] not give Proof satisfactory to [Anthem] that [she is] still Disabled." (*Id.*).

**B. Plaintiff's claim for benefits**

Plaintiff filed her initial application for disability benefits on July 9, 2012. (*See* AR 400). The application was based on a diagnosis of systemic lupus erythematosus (SLE) and fibromyalgia made by her treating rheumatologist, Dr. Avis Ware, M.D. (*Id.*). Anthem granted plaintiff's application and awarded her STD benefits. (*See* AR 250).

On October 2, 2012, prior to the expiration of her STD benefits, plaintiff applied for LTD benefits. (Doc. 22 at 4). In connection with her application, Anthem ordered an independent Peer Review by Dr. Joel Kovarsky, M.D., a physician who is Board Certified in Internal Medicine and Rheumatology. (AR 257-61). Dr. Kovarsky reviewed plaintiff's medical records and submitted a report to Anthem, which it received on November 8, 2012. (*Id*.). Dr. Kovarsky found that plaintiff has "a physical condition that is supported by the clinical evidence that is functionally impairing by impacting the claimant's activities of daily living (ADLs) or the ability to work." (AR 258). He opined that from "a rheumatologic perspective" she "would be restricted to working part-time (20 hours per week, four hour (sic) per work day, and five days a week) for up to the next six months while her medications are being adjusted for her equivocal undifferentiated connective tissue syndrome, which the attending provider (AP) noted could be systemic lupus erythematosus (SLE). She would be prone to overuse symptoms of her hands, particularly with frequent repetitive movements." (*Id*.). He assessed the following specific restrictions:

> The claimant would be able to sit for up to a total of four hours of a four hour work day, if provided the ability to change positions as needed, with ten minute breaks every hour. She would be able to walk or to stand for up to one hour in a four hour work day, with ten minute breaks provided every 30 minutes. She could lift, carry, push, and pull up to ten pounds frequently and up to 20 pounds occasionally. She can climb up to two short flights of stairs, with railings, during a work day. She cannot climb ladders (due to balance issues with her medication list, although not specifically mentioned in the records provided). She cannot crawl, but can occasionally twist or bend. She can occasionally reach overhead, and frequently at or below the waist level. She would be limited to repetitive handling, fingering and feeling as frequently.

(*Id*.). Dr. Kovarsky noted that many of plaintiff's complaints were self-reported and he opined that plaintiff's self-reported complaints were not consistent with "the observed behaviors in relation to the clinical findings." (*Id*.). He found that there was no documentation to support a

4

total inability to work from a rheumatologic basis. (*Id.*). Dr. Kovarsky opined that the restrictions and limitations he imposed began on June 29, 2012, and would extend six months from the date of his review; it would be prudent to see how plaintiff's clinical situation evolved and how she responded to her medications over the next six months; and it would be reasonable to reassess plaintiff's functionality and adjust her restrictions accordingly in six months. (AR 258-59).

Anthem approved plaintiff's claim for LTD benefits on November 29, 2012. (AR 250). Anthem determined that plaintiff became disabled on July 2, 2012, and benefits were payable effective October 8, 2012, the date following expiration of her STD benefits. (*Id.*). The notice advised plaintiff that pursuant to the Plan, if her disability was due to "Self-Reported Symptoms," Anthem would pay a monthly benefit for up to 24 months. (AR 251). "Self-Reported Symptoms" were defined as "manifestations of Your condition that are not objectively verifiable using tests, procedures or clinical examinations according to generally accepted medical practice" such as pain, fatigue, stiffness, soreness, and loss of energy. (*Id.*). Anthem advised plaintiff that it would "continue to request periodic medical updates as needed, which will include medical documentation and other information to ensure our continued accurate assessment of your condition and the impact to your functional ability." (AR 251).

Dr. Ware submitted an Attending Physician's Statement on May 7, 2013. (AR 615-16). She listed plaintiff's diagnoses as lupus and joint pain and reported her subjective symptoms were joint pain and morning stiffness. (AR 615). She indicated that plaintiff should not engage in prolonged walking, sitting, pushing, pulling and lifting. (*Id.*). Dr. Ware also opined that plaintiff was capable of engaging in "clerical/administrative (sedentary) activity" and could engage in only limited stress situations and interpersonal relations. (AR 616).

5

Anthem sent a letter to plaintiff dated June 12, 2013, asking that she contact Dr. Ware to expedite Anthem's request for plaintiff's medical records from November 2012 to the date of the letter. (AR 231). Anthem advised plaintiff that it had requested her complete medical records for that time period on April 29, 2013, and again on the date of the letter. (*Id.*). Anthem advised plaintiff that if it did not receive the requested records by June 28, 2013, her claim could be closed for failure to provide the records. (*Id.*). Anthem also requested that plaintiff provide notice when she received a determination on her application for social security benefits which she had filed in February 2013. (AR 232).

On July 8, 2013, plaintiff underwent a Functional Capacity Evaluation (FCE) at Anthem's request. (AR 183-84, 617-30). The summary portion of the FCE states that plaintiff demonstrated the ability to occasionally lift up to 30 pounds; carry up to 25 pounds; lift 10 pounds frequently due to elevated pain levels; engage in frequent sitting, standing and walking with positional changes as needed; occasionally climb stairs and squat due to pain; occasionally perform repetitive overhead reaching; and frequently handle and manipulate objects, although she experienced increased pain in the hands and forearms with repetitive activity. (AR 617). The evaluator reported that deficits identified during the testing included generalized weakness of the upper and lower extremities, although range of motion was within normal limits, and general deconditioning. (*Id.*). In addition, plaintiff complained of dizziness and nausea toward the end of the testing and on follow-up complained that she vomited when she returned home after the testing, experienced continued nausea, and experienced increased pain. (*Id.*). The evaluator stated that although plaintiff tested within the light physical demand level, plaintiff's work capacity was uncertain due to subjective complaints of exacerbated symptoms when engaged in activity outside the home and traveling. (*Id.*).

6

By letter dated August 29, 2013, Anthem informed plaintiff that it had determined she no longer met the Plan's definition of disability. (AR 165-67). Anthem advised plaintiff as follows:

> Our in-house medical consultant conducted a review of your medical records and despite allowing time for your medications to work for an eventual return to active employment[,] there has been no apparent change in your condition. Therefore, in order to objectively document your level of functionality, we arranged for you to undergo a [FCE], which occurred on July 8, 2013.
>
> According to the evaluator, you demonstrated the ability to perform at a light physical demand level. However, due to subjective complaints of symptom exacerbation with exposure to activity outside of the home and with traveling, your actual work capacity is uncertain.
>
> Based on the evaluator's findings, you have light work capacity and your own occupation is classified as light work within the national economy. Therefore, you no longer satisfy the above definition of disability and further benefits are denied. Moreover, your complaints of symptom exacerbation when participating in any outside activity or traveling is self-reported and therefore, cannot be given any consideration.

(AR 166). Anthem acknowledged that plaintiff had been approved for Social Security disability benefits effective July 2013 but stated it believed its conclusion was correct. (*Id.*). Anthem advised plaintiff of her right to appeal the decision by submitting a written request within 180 days of receipt of the letter and including any other documentation or information in support of the appeal. (AR 167).

Plaintiff requested a review of Anthem's decision to terminate her LTD benefits on September 6, 2013. (AR 470). Plaintiff relied on Dr. Ware's May 7, 2013 report to argue that she could not engage in stressful situations and was therefore precluded from performing the material and substantial duties of her own occupation. (AR 470-71). Plaintiff also disputed Anthem's conclusion that she could perform "light work." (AR 471). She alleged that she was receiving regular care from "more than four physicians and specialists" for medical conditions which included "[SLE], Fibromyalgia, Hashimoto's Disease, Diabetes, Severe Depression, High

7

Blood Pressure, Asthma and High Cholesterol." (AR 471). Plaintiff alleged that "[a]s a result of these diagnosed conditions, I suffer from severe fatigue and depression and four to five days a week I am bedridden and unable to perform light physical work around the house." (*Id.*). Plaintiff alleged that her physical disabilities entailed daily pain, swelling, fatigue, shortness of breath, stiffness and numbness. (*Id.*). She further alleged that although physical exertion "takes a lot out of my energy [it] is not the problem. The problem I experienced over the past 10 years while working in the office in close proximity to co-workers caused colds, asthma attacks, other illnesses and allergies to worsen." (*Id.*). Plaintiff stated: "Light work is not the issue. The issue is I cannot thrive in a working environment due to my immune system." (*Id.*).

Plaintiff sent a separate letter dated September 6, 2013, stating that she was attaching "recent medical notes and records" from Dr. Mina Lutts, M.D., her family physician, and Dr. Ware. (AR 456). The record from Dr. Ware was a report to Dr. Lutts dated May 14, 2013, documenting plaintiff's last office visit with Dr. Ware on that date. (AR 467). Dr. Ware wrote that she had seen plaintiff for a follow-up evaluation of "[p]ossible systemic lupus and fibromyalgia." (*Id.*). Dr. Ware reported that plaintiff had pain that she rated as 5/10 in her hands, wrists and knees every day but less swelling; she had morning stiffness that lasted one hour; she had no weakness or paresthesia in the extremities; her main complaints were worsening dry cough and severe itching; her blood pressure was not under control; and functional difficulties included dressing, getting in and out of bed, walking on flat ground (including up to 2 to 3 kilometers for exercise), washing and drying her entire body, bending down to pick up clothing from the floor, turning faucets on and off, and getting in and out of a car. (*Id.*). Plaintiff denied back pain, joint pain, or local weakness. (*Id.*). She had 18/18 tender points on exam, which was otherwise negative. (AR 468).

8

Plaintiff sent Anthem a letter dated October 4, 2013, advising that she had appointments with her physicians, including Dr. Ware, "shortly" and that she had received lab results showing that her conditions had worsened. (AR 473). Anthem made two requests on November 4, 2013 and November 11, 2013 for plaintiff's medical records from Dr. Ware for the period July 1, 2013 to the date of the requests. (AR 450, 455). According to Anthem, plaintiff did not submit any information from Dr. Ware subsequent to her May 2013 letter documenting the March 2013 office visit or an analysis of the lab results attached to plaintiff's October 4, 2013 letter. (Doc. 22 at 7).

Plaintiff's medical records were referred for an independent medical review by a Board Certified Rheumatologist and Internist, Dr. Dayton Dennis Payne, M.D. (AR 401). Dr. Payne finalized his review on December 2, 2013. (*Id.*). He reviewed the record "from a rheumatology perspective only." (AR 483). Dr. Payne noted that plaintiff had a history of systemic lupus and fibromyalgia and that the record mentioned fatigue, hypertension and diabetes. (AR 483). He reviewed the medical treatment notes, the results of numerous medical examinations and test results, and the FCE. (AR 483-85). Dr. Payne noted that Dr. Ware informed him that plaintiff had not shown for her August 2013 appointment and Dr. Ware had not seen plaintiff since her May 2013 appointment. (AR 486). He reported that Dr. Ware shared that she was not able to provide any follow-up information regarding plaintiff's functionality, she was not aware of any recent labs that had been performed or what treatment plaintiff was undergoing, and she was not aware of plaintiff's current medical situation. (*Id.*). Dr. Payne concluded based on the medical evidence and the FCE that there was no support for functional restrictions or limitations in the medical file and that plaintiff would have the ability to perform her occupation beyond August 29, 2013. (AR 487). Dr. Payne noted plaintiff's complaints of pain, stiffness and fatigue and the

9

positive ANA (antinuclear antibody) and DSDNA (double-stranded DNA); however, he found

the data and exams did not support active systemic lupus. (AR 485). Dr. Payne found that the

only objective disease supported by the clinical findings was fibromyalgia, with evidence of

diabetes. (*Id.*). Dr. Payne reported that the FCE revealed deconditioning and "marked

submaximal, inconsistent, and self limiting behaviors"; it did not support any restrictions or

limitations; and it supported a finding that plaintiff was able to perform her regular occupation.

(AR 486-87). Dr. Payne concluded that plaintiff had the ability to perform her light duty

occupation from a rheumatology perspective. (AR 487).

On December 6, 2013, Anthem upheld its decision to terminate plaintiff's LTD benefits

on appeal. (AR 399-402). Anthem relied on the report of Dr. Payne, whose findings it outlined

in the appeal decision. Anthem stated in the decision that it had received additional medical

documentation on plaintiff's behalf on October 7 and 9, 2013. (AR 401). Anthem noted that

although it had requested medical documentation from Dr. Ware for the period July 1, 2013

through the date of the request, Anthem had received no additional documents and Dr. Ware's

office verified on November 11, 2013, that there were no medical records for the dates of service

requested. (AR 401). Anthem determined that plaintiff did not meet the Plan's definition of

disability beyond August 29, 2013. (AR 402).

## II. THE PARTIES' POSITIONS

Plaintiff implicitly concedes that the Plan Administrator's decision in this case is

reviewed under the arbitrary and capricious standard by arguing that Prudential's decision to

deny her claim for LTD benefits is arbitrary and capricious. (Doc. 23 at 6). First, plaintiff

argues that Anthem lacks "credible and reliable" medical evidence to support its denial of

plaintiff's request for LTD benefits. (*Id.*). Plaintiff alleges that Anthem "failed to review the

quality and quantity of the medical evidence on each side and continued ordering additional

medical evaluations of Mrs. Brookbank from conflicted physicians until a favorable evaluation

was reached that would support a denial" of plaintiff's claim. (*Id.*). Plaintiff relies on the

following chronology and evidence to demonstrate that Anthem's denial of her claim is

unsupported:

- Dr. Kovarsky opined in November 2012 that from a rheumatology perspective, plaintiff would be restricted to a 20-hour workweek for up to six months while her medications were being adjusted. (*See* AR 200). Anthem approved plaintiff's claim for LTD benefits payable retroactive to October 8, 2012 based on that report. (AR 250).

- On May 1, 2013, Dr. Payne conducted a Peer File Review for purposes of a Waiver of Premium. (Doc. 23 at 7; AR 23-27).

- In June of 2013, approximately nine months from the date plaintiff's LTD benefits became payable, Anthem requested proof of continued disability from plaintiff. (Doc. 23 at 6). Plaintiff submitted reports from her physicians and Anthem scheduled plaintiff for an FCE on July 8, 2013. The evaluator concluded that plaintiff demonstrated the ability to occasionally lift 30 pounds; carry up to 25 pounds; lift 10 pounds frequently due to elevated pain levels; engage in frequent sitting, standing and walking with positional changes as needed; occasionally climb stairs and squat due to pain; occasionally reach overhead repetitively; and frequently handle and manipulate objects. (AR 617).

- Anthem required plaintiff to undergo another independent medical review by Dr. Payne after she appealed Anthem's decision to terminate her LTD benefits. (AR 483-88). In his December 2013 report, Dr. Payne did not mention his previous conversations with Dr. Ware confirming that plaintiff has systemic lupus and fibromyalgia supported by clinical findings and diagnostic testing. Further, Dr. Payne did not discuss the reason plaintiff did not show for her August 2013 appointment with Dr. Ware, which plaintiff alleges without any citation to the record "was due to her inability to get out of bed from her pain and fatigue." (Doc. 23 at 7-8).

Plaintiff concludes that defendant did not have a "neutral independent evaluation"

performed; Anthem continued to use evaluators who would provide the decision it desired; and

Anthem ignored the information provided by the physicians who physically examined plaintiff and "unequivocally state[d], in their records and telephone interviews, that [she] is disabled and unable to work." (*Id*. at 8).

Anthem alleges that it engaged in a principled decision-making process in reaching its determination that plaintiff did not meet the definition of disability beyond August 29, 2013, and its decision is supported by substantial evidence. (Doc. 22). Anthem alleges that its decision is supported by the July 8, 2013 FCE results, which plaintiff has not offered any evidence to rebut, and two independent reviews by Board Certified rheumatologists, Drs. Kovarsky and Payne. Anthem alleges that plaintiff did not meet her burden to prove her disability continued beyond August 29, 2013, because she did not seek treatment from her treating rheumatologist Dr. Ware or supply records from Dr. Ware after May 2013, and the most recent record provided by Dr. Ware is unclear as to whether she held the opinion that plaintiff was disabled from her own occupation as of the date of her report. Finally, Anthem alleges that plaintiff's state law claims for breach of contract and bad faith must be dismissed because they are preempted by ERISA.

## III. ERISA LAW

The Sixth Circuit has directed that claims regarding the denial of ERISA benefits are to be resolved using motions for judgment on the administrative record. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). The district court is to conduct its review "based solely upon the administrative record." *Id. See also Zenadocchio v. BAE Sys. Unfunded Welfare Ben. Plan*, 936 F. Supp.2d 868, 872 (S.D. Ohio 2013). The Court's review is confined to the administrative record as it existed on the date the administrator issued its final decision upholding the termination of the claimant's LTD benefits. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378-79 (6th Cir. 2005) (citing *Wilkins*, 150 F.3d at 615).

12

There is no dispute that Anthem's decision to terminate plaintiff's LTD benefits in this case is subject to the arbitrary and capricious standard of review.  Under the arbitrary and capricious standard of review, this Court must determine whether Anthem's decision to terminate plaintiff's LTD benefits "is the result of a deliberate, principled reasoning process and . . . is supported by substantial evidence."  *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)); *Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 704 (6th Cir. 2014) (the administrator's decision denying benefits must be upheld if it was "the result of a deliberate, principled reasoning process" and was "supported by substantial evidence.").  Substantial evidence means "much more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Holler v. Hartford Life & Acc. Ins. Co.*, 737 F. Supp.2d 883, 891 (S.D. Ohio 2010) (quoting *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 171 (6th Cir. 2003)).  When a "reasoned explanation" can be offered for the decision to deny benefits based on the evidence, the outcome is not arbitrary or capricious.  *Cook v. Prudential Ins. Co. of Am.*, 494 F. App'x 599, 604 (6th Cir. 2012) (citing *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1996)).

The arbitrary and capricious standard of review is not a mere rubber stamp of the plan administrator's decision.  *Kramer v. Paul Revere Life Ins. Co.*, 571 F.3d 499, 508 (6th Cir. 2009) (citing *Moon*, 405 F.3d at 379); *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald*, 347 F.3d at 172).  As the Sixth Circuit stated in *McDonald*:

> [T]he district court had an obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously in making ERISA benefits determinations.  This obligation inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues.  Otherwise, courts would be

13

> rendered to nothing more than rubber stamps for any plan administrator's decision
> as long as the plan was able to find a single piece of evidence--no matter how
> obscure or untrustworthy--to support a denial of a claim for ERISA benefits.

347 F.3d at 172.

In a termination of benefits case, "it is reasonable to require a plan administrator who
determines that a participant meets the definition of 'disabled,' then reverses course and declares
that same participant 'not disabled' to have a *reason* for the change," whether that evidence is
new or old medical evidence showing improvement in the claimant's medical condition or a
change in the plan's definition of disability. *Morris v. American Electric Power Long-Term
Disability Plan*, 399 F. App'x 978, 984 (6th Cir. 2010) (emphasis in original). *See also
McDonald*, 347 F.3d at 169 (decision to terminate LTD benefits was arbitrary and capricious
where the medical evidence established that the plaintiff's diagnosis and condition had remained
unchanged since the claimant was first diagnosed with disabling conditions and awarded LTD
benefits). Lack of a reason for the change is "the very definition of 'arbitrary and capricious.'"
*Morris*, 399 F. App'x at 984. *See also Kramer v. Paul Revere Life Ins. Co.*, 571 F.3d 499, 507
(6th Cir. 2010) (plan administrator's decision to terminate disability benefits after five years in
the absence of evidence showing medical improvement and based on medical consultants'
opinions that supported proposition the plaintiff was never disabled from her own occupation
was arbitrary and capricious). The court should not uphold a decision to terminate benefits when
there is an absence of reasoning in the record to support the termination. *Neaton v. Hartford Life
and Acc. Ins. Co.*, 517 F. App'x 475, 483 (6th Cir. 2013) (citing *McDonald*, 347 F.3d at 172).

A plan that requires the claimant to provide objective medical evidence of her disability
places the burden on the plaintiff to establish her disability rather than imposing the burden on
the insurer to show the contrary. *See Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 660-61 (6th

14

Cir. 2013). It is neither irrational nor unreasonable to require a claimant to provide objective medical evidence of continuing disability. *Id.* at 660 (citing *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 166 (6th Cir. 2007)).

A plan administrator is not obligated to give deference to a claimant's treating physicians' opinions over the opinions of its own consulting physicians. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822 (2003). The opinions of a treating physician are not entitled to a presumption of deference when evaluating a denial of benefits under an ERISA plan. *Id. See also Vochaska v. Metropolitan Life Ins. Co.*, 995 F. Supp.2d 801, 809 (W.D. Mich. Jan. 21, 2014) (acknowledging that Supreme Court decision in *Nord* which rejected treating physician rule in ERISA cases was binding); *McDonald*, 347 F.3d at 169 (stating that when a plan administrator chooses to rely on the medical opinion of one doctor over another in making an ERISA benefits determination, that decision is rarely arbitrary and capricious). However, a plan may not arbitrarily disregard such opinions in making a benefits determination. *Vochaska,* 995 F. Supp.2d at 810. "Generally speaking, a plan may not reject summarily the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion." *Id.* (citing *Elliott v. Metro. Life Ins. Co.,* 473 F.3d 613, 620 (6th Cir. 2006)). Thus, a plan administrator is not bound to accept a treating physician's opinion, but the administrator may not reject a treating physician's opinion without reason. *Id. See also Wooden v. Alcoa, Inc.*, 511 F. App'x 477, 483-84 (6th Cir. 2013) ("Reliance on other physicians is reasonable so long as the administrator does not totally ignore the treating physician's opinions.") (citing *Balmert v. Reliance Standard Life Ins. Co.,* 601 F.3d 497, 504 (6th Cir. 2010)). As a general rule, when a plan administrator chooses to rely upon one doctor's medical opinion over that of another in deciding whether a claimant is entitled to ERISA benefits, the decision cannot be held to be arbitrary and capricious

15

because it would be possible to offer a reasoned explanation based on the evidence for the decision. *McDonald*, 347 F.3d at 169 (citations omitted). *See also Huffaker v. Metro. Life Ins. Co.*, 271 F. App'x 493, 502-03 (6th Cir. 2008) (as a general rule, "when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another . . . the plan administrator's decision cannot be said to have been arbitrary and capricious.").

There is "nothing inherently objectionable" about a Plan administrator relying on a file review by a qualified physician when making a benefits determination. *Huffaker*, 271 F. App'x at 503. "[R]eliance on a file review does not, standing alone, require the conclusion that [the administrator] acted improperly." *Id.*; *Zenadocchio*, 936 F. Supp.2d at 889 (citing *Calvert v. Firstar Finance, Inc.,* 409 F.3d 286, 296 (6th Cir. 2005)). The Sixth Circuit has declined to adopt a blanket rule that the failure to perform an independent medical examination renders a decision to deny benefits arbitrary and capricious. *Smith v. Continental Cas. Co.,* 450 F.3d 253, 263 (6th Cir. 2006). However, the Sixth Circuit has acknowledged that the failure to conduct such an examination may be a factor to be taken into consideration in determining whether the decision was arbitrary and capricious. *Id.* ("while . . . [the plan administrator's] reliance on a file review does not, standing alone, require the conclusion that [the plan administrator] acted improperly, we find that the failure to conduct a physical examination - especially where the right to do so is specifically reserved in the plan - may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination") (citing *Calvert,* 409 F.3d 295). *See also Zenadocchio*, 936 F. Supp.2d at 889 ("the decision to conduct file reviews, rather than a physical examination, is a factor properly considered in determining whether [the plan administrator's] decision was arbitrary and capricious") (citing *Rose,* 268 F. App'x at 450; *Hunter v. Life Ins. Co. of N. Am.,* 437 F. App'x 372, 378 (6th Cir. 2011) ("The failure to perform

16

a physical examination is 'one factor that we may consider in determining whether a plan

administrator acted arbitrarily and capriciously in giving greater weight to the opinion of its

consulting physician.'") (citations omitted)).  Whether a doctor has physically examined the

claimant is one factor that the court may consider in determining whether a plan administrator

acted arbitrarily and capriciously in giving greater weight to the opinion of its consulting

physician.  *Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 508 (6th

Cir. 2005) (citing *Calvert*, 409 F.3d at 295).

     The Sixth Circuit has looked unfavorably on file-only reviews where the reviewer makes

a credibility determination.  *Vochaska*, 995 F. Supp.2d at 811 (citing *Judge,* 710 F.3d at 663).

Thus, the Court in *Vochaska* found the file-only review to be inadequate where, among other

factors, the administrator "implicitly discredited [the plaintiff's] self-reported symptoms" as

described by the treating doctor.  *Id.  See also Caesar v. Hartford Life & Acc. Ins. Co.*, 464 F.

App'x 431, 435-36 (6th Cir. 2012) (decision to deny benefits was arbitrary and capricious where

administrator relied on opinions of the independent review physicians; they failed to adequately

explain why they rejected the opinions of the claimant's treating physicians; and they at least

implicitly discredited plaintiff's subjective complaints of pain).  As found by this district court in

*Zenadocchio*, 936 F. Supp.2d at 890:

> Especially when an issue exists as to the credibility of a claimant's subjectively-
> reported symptoms, the plan must follow reasonable procedures in deciding that
> issue.  So, for example, 'credibility determinations made without the benefit of a
> physical examination support a conclusion that the decision was arbitrary.'
> *Helfman v. GE Group Life Assur. Co.,* 573 F.3d 383, 395-96 (6th Cir. 2009); *see
> also Calvert v. Firstar Fin., Inc.,* 409 F.3d at 296-97 (conclusion that a claimant
> had subjectively exaggerated her symptoms was 'incredible on [its] face' when
> physician reaching that conclusion never examined the claimant).  This is
> particularly true when there is, in fact, objective medical evidence of the
> underlying condition which forms part of the basis of an opinion that a claimant is
> disabled due to pain, and the plan administrator performs a selective, rather than

17

comprehensive, review of the records in reaching the opposite conclusion. *See, e.g., Ebert v. Reliance Standard Life Ins. Co.,* 171 F. Supp.2d 726, 739-40 (S.D. Ohio 2001) (where the record contained evidence of physical conditions which could reasonably cause pain, it was a 'complete misreading of the medical records . . . to say that Plaintiff's complaints of pain or weakness . . . are subjective and unverifiable').

*Id.*

Conversely, the Sixth Circuit has found that where the reviewing physician's conclusions are amply supported by the record and there is considerable objective evidence of the plaintiff's ability to work, reliance on a file review that includes a subjective credibility determination is not arbitrary and capricious. *See Cook,* 494 F. App'x at 606 (reviewing doctor's conclusion that the plaintiff's subjective claims of chronic pain were "not supported" was "in effect, a subjective credibility determination best made with the assistance of an actual medical examination"; however, the doctor's remaining conclusions were amply supported by the record and the "existence of considerable objective evidence in support of [the plaintiff's] ability to perform sedentary work distinguish[ed] his case from others in which the absence of a medical exam carried additional weight"); *Curry v. Eaton Corp.,* 400 F. App'x 51, 67 (6th Cir. 2010) (credibility was not material to disability determination where the plan asked only whether "sufficient objective evidence exists to support a finding of 'disabled'," and there was no indication in the record that defendants or any of the reviewing physicians relied upon a credibility determination to any extent in coming to that conclusion).

## IV. RESOLUTION

### A. Plaintiff's ERISA claim

Anthem's decision to terminate plaintiff's LTD benefits effective August 29, 2013, was not arbitrary and capricious. The decision was "the result of a deliberate, principled reasoning process." *Glenn,* 461 F.3d at 666. Anthem considered the medical evidence submitted by

plaintiff's treating providers, family physician Dr. Lutts and rheumatologist Dr. Ware, in connection with plaintiff's initial claim for benefits. (AR 400). The Attending Physician Statement completed by Dr. Ware showed that plaintiff was diagnosed with SLE and fibromyalgia. (AR 400). The clinical information indicated that plaintiff was being treated primarily by Dr. Lutts and Dr. Ware with immuno-suppressants and pain management medication. (*Id.*). Anthem granted plaintiff's application for benefits based on the medical evidence before it at that time. When plaintiff's STD benefits were about to expire in October 2012, Anthem obtained an independent medical review by rheumatologist Dr. Kovarsky in connection with plaintiff's application for LTD benefits (AR 257-61), which was its right under the Plan. (AR 152). Anthem granted plaintiff's application for LTD benefits based on Dr. Kovarsky's review and his conclusion that plaintiff was restricted to working 20 hours a week. (AR 250, 401).

Anthem did not act improperly by obtaining updated medical information from plaintiff following its award of benefits to her. (AR 152). Anthem's requests for updated medical information related to plaintiff's disability claim were reasonable. Medical information in the file suggested that plaintiff's medical condition was not static. In the November 8, 2012 independent medical review on which Anthem relied in awarding plaintiff LTD benefits, Dr. Kovarsky had opined that the duration of plaintiff's disability was June 29, 2012 to six months from that date, and further assessment would be warranted after six months had elapsed. (AR 258-59). Dr. Kovarsky specified that plaintiff "would be restricted to working part-time . . . *for up to the next six months while her medications are being adjusted for her equivocal undifferentiated connective tissue syndrome, which the attending provider (AP) noted could be [SLE]."* (AR 258) (emphasis added). Dr. Kovarsky opined that the expected duration of the

19

restrictions he imposed was unknown; it would be prudent to see how her clinical situation evolved and how she responded to her medications over the next six months; and it would be reasonable to reevaluate her functionality and adjust her restrictions accordingly in six months. (AR 258-59). Further, Dr. Kovarsky noted in his Peer Review that many of plaintiff's complaints were self-reported and were not consistent with "the observed behaviors in relation to the medical findings." (*Id.*). The Plan provides that if a claimant's disability is due to self-reported symptoms, including fatigue, stiffness, pain, and loss of energy, monthly disability benefits will be limited to 24 months unless certain conditions are met. (AR 251). It was reasonable for Anthem to elicit additional medical information for assessing whether plaintiff's self-reported symptoms warranted the continued payment of disability benefits. *See Rose v. Hartford Fin. Servs. Grp., Inc.*, 268 F. App'x 444, 453 (6th Cir. 2008) ("it is entirely reasonable for an insurer to request objective evidence of a claimant's functional capacity"); *Cooper*, 486 F.3d at 166 ("Requiring a claimant to provide objective medical evidence of disability is not irrational or unreasonable.").

Anthem initially sought updated medical information from plaintiff's treating rheumatologist, Dr. Ware, the medical source who presumably was most knowledgeable about her condition and functional restrictions. (AR 231). Anthem requested plaintiff's complete medical records from Dr. Ware for the time period beginning November 2012 to April 29, 2013 (the date of its first request) and to June 12, 2013 (the date of its second request). (*Id.*). Anthem also sought plaintiff's assistance in obtaining the updated medical information from Dr. Ware. (*Id.*). Dr. Ware submitted an Attending Physician's Statement dated May 7, 2013. (AR 615-16). In the report, Dr. Ware assessed restrictions against prolonged walking, sitting, pushing, pulling and lifting. (AR 615). However, Dr. Ware also opined that plaintiff was capable of performing

"clerical/administrative (sedentary) activity" as defined in the Dictionary of Occupational Titles. (AR 616). The report thus created ambiguities that called for clarification.

Anthem reasonably sought an FCE to clarify the ambiguity in Dr. Ware's report and obtain an independent, objective assessment of plaintiff's functional capabilities. Plaintiff has not shown that Anthem's decision to engage in this process was improper for any reason. Plaintiff vaguely suggests that the FCE was "factually incorrect and biased." (Doc. 23 at 3). Plaintiff indicates that the FCE was inconsistent with an "independent evaluation" that Anthem "performed on October 29, 2013," which stated that plaintiff had a physical condition supported by the clinical evidence that imposed functional impairments by impacting her activities of daily living and ability to work.[5] (*Id*.). Plaintiff alleges that Anthem chose to ignore the independent evaluation and rely solely on the inconsistent FCE report. (*Id*.). The fact that the results of the FCE performed in July 2013 were inconsistent with the earlier 2012 report of Dr. Kovarsky does not mean that Anthem acted arbitrarily by deciding to accept the results of the FCE. *See Eastin v. Reliance Standard Life Ins. Co.*, No. 13-6247, 2014 WL 3397141, at *2 (6th Cir. July 10, 2014) ("an FCE is one method by which a claimant can demonstrate the physical limitations caused by fibromyalgia") (citing *Huffaker*, 271 F. App'x at 500). It was Anthem's prerogative under the Plan to weigh the medical evidence and decide which evidence to accept in making the termination decision. Anthem did not act arbitrarily simply by deciding to credit the FCE over Dr. Kovarsky's Peer Review. To the contrary, Dr. Kovarsky's opinion that plaintiff's condition could change with treatment and should be reevaluated after six months from the date of his

---

[5] Plaintiff does not cite any part of the administrative record to support her allegation. The Court is not aware of an independent evaluation report from October 29, 2013. Presumably plaintiff intended to cite an independent medical review performed by Dr. Kovarsky that lists a referral date of October 29, 2012, and includes the language plaintiff references. (AR 258).

review demonstrates that Anthem acted reasonably by relying on a more recent medical evaluation.  (AR 258).

After plaintiff appealed the termination of her LTD benefits, Anthem gave plaintiff an opportunity to submit additional medical records from her treating providers.  The most recent record plaintiff provided from Dr. Ware documented an office visit in May 2013.  (AR 467).  On November 11, 2013, Anthem received verification from Dr. Ware's office that there were no medical records for the period July 1, 2013 to November 1, 2013.  (AR 401).  Plaintiff alleges that Anthem failed to consider why she was unable to attend an appointment with Dr. Ware in August 2013, which she alleges was "due to her inability to get out of bed from her pain and fatigue." (Doc. 23 at 8-9).  However, she has not cited any portion of the Administrative Record in support of her explanation.  *See Moon*, 405 F.3d at 378 (court's review is confined to the record as it existed on date of final decision upholding termination of LTD benefits).  After Anthem learned that Dr. Ware had no recent records to provide, Anthem reasonably referred plaintiff's medical records for an independent and updated medical review, which was performed by Dr. Payne.  (AR 483-88).  Plaintiff challenges the referral on the grounds Dr. Payne was not an independent evaluator because he had previously reviewed plaintiff's medical records and issued a medical opinion, and he allegedly misrepresented conversations with plaintiff's treating physicians and omitted material facts from these conversations in his review.  (Doc. 23 at 3-4). Plaintiff's allegations are not substantiated.  Dr. Payne had performed a prior medical review of plaintiff's records in May 2013 in connection with a "Waiver of Premium," which was not related to plaintiff's application for LTD benefits.  (AR 23-24; Doc. 22 at 8).  Plaintiff has not explained why Dr. Payne's prior review compromised his independence in performing a Peer Review in connection with her claim for LTD benefits.

22

Further, plaintiff has not shown that Anthem erred by relying on Dr. Payne's December 2013 evaluation on the ground he made misrepresentations or omitted material facts from the report. (Doc. 23 at 4). Plaintiff suggests that Dr. Payne improperly omitted from the December 2013 report his summaries of April 2013 discussions with Drs. Ware and Lutts which Dr. Payne had included in his earlier April 2013 report. (Doc. 23 at 4, citing AR 23; *Id*. at 7). In that earlier report, Dr. Payne indicated that he had contacted the treating physicians and they had relayed the following information:

> Dr. Ware felt the diagnosis was systemic lupus and fibromyalgia. Dr. Ware informed me that the diagnosis of lupus was supported by the constitutional symptoms and the presence of the double stranded DNA antibody. No end organ manifestations of systemic lupus were documented in the file.

> Dr. Lutts felt that the systemic lupus was 'flaring' on a regular basis and there was also asthma present in the claimant. Dr. Lutts felt the claimant was unable to work due to the diagnoses.

(AR 25). In his December 2013 report, which was for the purpose of providing updated medical information in connection with plaintiff's appeal of the termination of her LTD benefits, Dr. Payne summarized his more recent conversation with Dr. Ware from November 2013. (AR 486). Dr. Payne wrote that Dr. Ware had not seen plaintiff since May 2013, plaintiff had not kept an August 2013 appointment with Dr. Ware, Dr. Ware was not aware of plaintiff's current medical situation, Dr. Ware could not provide any follow-up information regarding functionality, and she was not aware of any recent lab work or any treatment that plaintiff was still undergoing. (AR 486). Dr. Payne also reported that plaintiff has a history of systemic lupus and fibromyalgia. (AR 483). There is no basis for finding that Dr. Payne made misrepresentations or omissions of material fact by relaying only his most recent conversation with Dr. Ware in each of his reports. Further, plaintiff has not cited any record evidence to show that Dr. Payne

had information before him indicating that plaintiff failed to keep her August 2013 appointment "due to her inability to get out of bed from her pain and fatigue." (Doc. 23 at 7-8). Absent any evidence of misrepresentations or material omissions from Dr. Payne's December 2013 report, there is no basis for finding that Anthem acted arbitrarily and capriciously by relying on the report.

Anthem performed a "neutral independent evaluation" of the medical evidence in connection with its decision to terminate plaintiff's LTD benefits. (AR 165-67). There is no evidence that Anthem engaged the services of medical sources who were biased against plaintiff or had a conflict of interest. Even assuming there was a conflict of interest, plaintiff has not indicated how it adversely impacted the benefits decision. *See Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 312 (6th Cir. 2010) (the court acknowledged an "inherent" conflict but found no indication that the administrator's review was improperly influenced by the conflict). Neither is there any evidence that Anthem ignored information provided by the physicians who physically examined her.[6] Anthem engaged in a principled and reasoned decision-making process in reaching its decision to terminate plaintiff's LTD benefits. Reversal of Anthem's decision is not warranted on this ground.

Plaintiff also alleges that Anthem lacked "credible and reliable" medical evidence to support its denial of her request for LTD benefits. (Doc. 23 at 6). Plaintiff alleges that Anthem's initial disability determination was supported by (1) the November 2012 report of Dr. Kovarsky, and (2) the opinions of her treating physicians as set forth by independent medical evaluator Dr. Payne in his May 2013 "Waiver of Premium" file review. (*Id.* at 6-8, citing AR 25). Plaintiff

---

[6] Plaintiff appears to suggest that Dr. Kovarsky physically examined her. (Doc. 25 at 5). This is inaccurate. Dr. Kovarsky simply conducted a file review. (AR 257-61).

24

alleges there is no independent medical evaluation to support Anthem's decision to terminate her LTD benefits. (*Id*. at 8).

In response, Anthem alleges that plaintiff has not met her burden to prove her continued disability past August 29, 2013. Anthem asserts that plaintiff failed to provide information regarding her current condition as required under the Plan terms. (Doc. 22 at 12). Anthem alleges it reasonably relied on medical evidence it obtained in deciding to terminate plaintiff's LTD benefits, including a review of the record by independent medical reviewer Dr. Kovarsky in connection with the initial decision to award LTD benefits; the FCE Anthem requested after it received an inconclusive report from treating rheumatologist Dr. Ware; and a second independent medical review by rheumatologist Dr. Payne in connection with plaintiff's appeal of the termination decision. (Doc. 22).

Anthem's Plan requires the employee to give satisfactory proof to Anthem from "time to time" that she is still disabled. (AR 152). Thus, it was plaintiff's burden to establish her continued disability under the Plan. *See Judge*, 710 F.3d at 661. Anthem had a rational basis for concluding that plaintiff did not provide proof of continued disability and that her medical condition had improved to the extent that she was no longer entitled to disability benefits under the Plan.

In making its initial benefits termination decision, Anthem relied on Dr. Kovarsky's independent Peer Review performed in November 2012. (AR 257-61). Dr. Kovarsky assessed plaintiff as incapable of performing full-time work from a rheumatology standpoint. (*Id*.). In that same report, Dr. Kovarsky indicated that plaintiff's medical condition was not static. He indicated that the expected duration of the restrictions he imposed was unknown but could extend for six months from June 29, 2012; it would be prudent to see how plaintiff's clinical

25

situation evolved and how she responded to her medications over the next six months; and it would be reasonable to reevaluate plaintiff's functionality and adjust her restrictions accordingly in six months. (AR 258-59). After more than six months from the date of Dr. Kovarsky's review had elapsed, Anthem acted on Dr. Kovarsky's recommendation by soliciting further medical information from plaintiff's treating physicians. In response, Dr. Ware submitted an Attending Physician's Statement on May 7, 2013, in which she indicated that plaintiff should not engage in prolonged walking, sitting, pushing, pulling and lifting. (AR 615-16). Dr. Ware opined in the same statement that plaintiff was capable of engaging in "clerical/administrative (sedentary) activity." (AR 616). Anthem reasonably rejected Dr. Ware's seemingly contradictory findings as insufficient to substantiate plaintiff's claim for continued LTD benefits.

Plaintiff nonetheless faults Anthem for allegedly ignoring diagnoses and opinions rendered by Dr. Ware and her treating family physician, Dr. Lutts, prior to Dr. Ware's May 2013 report. Plaintiff asserts that Dr. Ware had diagnosed her with fibromyalgia and with systemic lupus which was supported by "the constitutional symptoms and presence of the double stranded DNA antibody," and Dr. Lutts felt that she was unable to work due to her diagnosed systemic lupus which was flaring on a regular basis. (Doc. 23 at 4, citing AR 23). The diagnoses and assessment plaintiff relies on were referenced by Dr. Payne in the May 2013 Peer Review he performed in connection with the "Waiver of Premium" for life insurance benefits. (AR 25; Doc. 22 at 8). Dr. Ware provided diagnoses but apparently did not discuss any functional limitations with Dr. Payne. (Id.). Dr. Lutts gave her opinion that plaintiff was "unable to work due to the diagnoses." (Id.).

Anthem did not err by failing to find plaintiff entitled to continued disability benefits based on Dr. Ware's diagnoses and Dr. Lutts' conclusory assessment. First, there is no

indication that Anthem ignored the diagnoses rendered by plaintiff's treating physicians. Dr. Payne acknowledged in his December 2013 Peer Review that Dr. Ware had documented diagnoses of systemic lupus and fibromyalgia in March 2012 and thereafter. (AR 414). However, plaintiff does not dispute that Dr. Ware provided no medical information for the period post-dating May 2013 when contacted by Anthem for current information in connection with her LTD application. Instead, Dr. Ware advised Anthem through Dr. Payne that she had not seen plaintiff since a May 2013 appointment, plaintiff had not shown for her August 2013 appointment, Dr. Ware was not aware of plaintiff's current medical situation, and she was not able to provide any follow-up information regarding plaintiff's functionality. (AR 417-18).

Further, Anthem was not required to defer to Dr. Lutts' opinion that plaintiff was disabled due to her diagnoses. A diagnosis is not tantamount to a finding of functional restriction. *Eastin*, 2013 WL 4648736, at *10 (diagnosis and disability are "separate and distinct.") (citing *Zenadocchio*, 936 F. Supp.2d at 885) (undisputed fibromyalgia diagnosis was not dispositive of the plaintiff's eligibility for benefits where the plan provided that the claimant "must be 'disabled' under the Plan from performing [work].")). *See also McLaren-Knipfer v. ArvinMeritor, Inc.*, 876 F. Supp.2d 913, 921 (E.D. Ky. 2012) ("Here, the terms of the [policy will] grant benefits [beyond 36 months] when an employee is unable to perform [any work]. Thus, a diagnosis is not determinative, and Plaintiff's functional capacity is key."). There is no indication that Dr. Lutts provided any specific functional restrictions in support of her opinion that plaintiff was disabled. Anthem therefore had substantial reasons for declining to defer to Dr. Lutts' conclusory opinion of disability based on plaintiff's diagnoses. *Black & Decker Disability Plan*, 538 U.S. at 831.

27

The record thus demonstrates that Anthem did not have current medical evidence from plaintiff's treating physicians indicating that her diagnosed conditions were disabling as of August 29, 2013. The lack of current medical evidence from the treating physicians, considered in conjunction with the remaining medical evidence of record, constitutes substantial evidence in support of Anthem's termination decision. Anthem obtained an FCE and elicited the opinion of an independent medical source and rheumatology specialist, Dr. Payne, in connection with plaintiff's appeal. Dr. Payne reviewed the medical evidence of record to date, including the FCE, and contacted Dr. Ware to obtain updated medical evidence from plaintiff's treating rheumatologist. (AR 483-87). Dr. Payne rendered his opinion based on his review of the medical data in the file and his review of the FCE evaluation, which is a "reliable and objective method of gauging" the ability to complete work-related tasks for a claimant with fibromyalgia. *Huffaker*, 271 F. App'x at 500; *Eastin*, 2013 WL 4648736, at *10 ("In the ERISA context, the Sixth Circuit has specifically stated that while an insured 'could certainly find [it] burdensome [to] proffer objective evidence of fibromyalgia itself' the insured can furnish 'objective evidence of a disability due to fibromyalgia . . . without the same level of difficulty' by proffering evidence of a 'functional capacity evaluation, [which is] a reliable and objective method of gauging the extent one can complete work-related tasks.'"). Dr. Payne's conclusion that the data and the FCE demonstrated plaintiff "would have the abilities to perform her occupation, beyond August 29, 2013, from a rheumatology perspective" (*Id.*), substantially supports Anthem's decision to terminate plaintiff's LTD benefits. Plaintiff has not shown there is countervailing evidence that calls into question the validity of Dr. Payne's opinion and, in turn, Anthem's reliance on the opinion to uphold the termination of plaintiff's LTD benefits. Anthem was not bound to credit plaintiff's subjective complaints of pain and other symptoms in light of the

28

absence of current objective medical evidence to corroborate her self-reported complaints.

Substantial evidence supports Anthem's decision that plaintiff was not disabled as of August 29, 2013.

Anthem's decision to terminate plaintiff's LTD benefits effective August 29, 2013, was not arbitrary and capricious. Anthem's decision was the result of a "deliberate, principled reasoning process" and is "supported by substantial evidence." *Cultrona*, 748 F.3d at 704. The decision should be upheld.

### B. Plaintiff's state law claims

Plaintiff brings claims for breach of contract and "bad faith" in the complaint. Plaintiff alleges in support of these claims that Anthem has breached its contractual obligations by denying coverage under the Plan despite the medical evidence presented. (Doc. 2, First Claim). Plaintiff further alleges that Anthem breached a duty of good faith it owed plaintiff by its handling of her claim and by refusing to provide coverage to her under the Plan. (*Id.*, Second Claim). Plaintiff seeks a declaratory judgment under Ohio Rev. Code § 2721.01, *et seq.* declaring the parties' rights and obligations under the Plan and declaring that the Plan provides LTD coverage to plaintiff. (*Id.*, Third Claim).

Anthem alleges that plaintiff's state law claims for breach of contract and "bad faith" must be dismissed because these claims are preempted by ERISA. (Doc. 22 at 12-13). Plaintiff has not addressed the preemption argument in any of her filings.

To the extent the complaint alleges state law claims for breach of contract and breach of the duty of good faith based on the allegation that Anthem breached it obligation to pay plaintiff disability benefits, her claims are preempted by ERISA. ERISA allows anyone who qualifies as a "participant or beneficiary" of an employee benefit plan to bring a civil action "to recover

benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA's express preemption provision, 29 U.S.C. § 1144(a), "preempts state laws insofar as they 'relate to any employee benefit plan'" covered by ERISA. *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 943 (6th Cir. 1994) (quoting 29 U.S.C. § 1144(a)). Where the plaintiff in essence seeks to recover benefits allegedly due under an ERISA plan by alleging a state law claim, that claim is preempted by ERISA. *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) (internal citations omitted). The Supreme Court and the Sixth Circuit have specifically held that state law claims for breach of fiduciary duty and bad faith are preempted. *Lee v. MBNA Long Term Disability & Benefit Plan*, 136 F. App'x 734, 746 (6th Cir. 2005) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)); *Cromwell*, 944 F.2d at 1276 (holding state-law claims for breach of contract and breach of good faith, among others, based on denial of benefits were "at the very heart of issues within the scope of ERISA's exclusive regulation" and were preempted). Further, a state law claim that "duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). In other words, if the defendant has no independent legal duty aside from ERISA to provide benefits and the individual at some point could have brought his claim under ERISA, the state law cause of action is pre-empted by ERISA. *Id.* at 210. The ERISA civil enforcement mechanism is exclusive. *Id.* at 216.

Plaintiff seeks to recover disability benefits under the Anthem Life Long Term Disability Plan, an ERISA plan, under state law theories that relate to the alleged improper processing and denial of her claim for benefits. Plaintiff does not allege the violation of any legal duty

independent of ERISA. Therefore, her state law breach of contract and breach of good faith claims are preempted by ERISA. To the extent plaintiff seeks declaratory relief under Ohio statutory law, that remedy is likewise preempted by ERISA. *Davila*, 542 U.S. at 216. Plaintiff's state law claims should therefore be dismissed as preempted by ERISA.

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendant's motion for judgment on the administrative record (Doc. 22) be **GRANTED**.

2. Plaintiff's motion for judgment on the administrative record (Doc. 23) be **DENIED**.

3. Plaintiff's state law claims be **DISMISSED** on preemption grounds and judgment be entered in favor of defendant and against plaintiff on the claim to recover benefits under ERISA.

Date: 4/20/16

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ELIZABETH BROOKBANK,                              Civil Action No. 1:15-cv-165
      Plaintiff,                                  Dlott, J.
                                              Litkovitz, M.J.

      vs.

ANTHEM LIFE INSURANCE
COMPANY,
      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).